**Exhibit B**

**Copy of Executed Prepetition Engagement Letter**



January 3, 2020

Pamela M. Egan – Partner
Potomac Law Group, PLLC
1300 Pennsylvania Avenue, NW | Suite 700
Washington, DC 20004

Re:  XS Ranch  - Bastrop, Texas

Dear Ms. Egan:

Thank you for the opportunity to provide real estate consultation and valuation services on XS Ranch.

My current hourly rate schedule is attached. You have provided an initial retainer of $10,000 as of January 3, 2020. This retainer will be used to meet expenses incurred with respect to The Dore Group's consultation and valuation services regarding the proposed Scope of Work.  An Engagement Letter reflecting the Scope of Work shall follow.  Monthly progress billings will be provided with full accounting of hours and expenses.  If the retainer is depleted before work is completed, it is understood that you will replenish it to the original amount quoted above, or such other figure as we may agree.

If any party other than yourself will be responsible for payment, that party must also sign this proposal to acknowledge our agreement and this authorization to proceed.

Fees quoted herein are for the provision of professional services and are not in any way contingent upon the results of the consultation or valuation reported or the outcome of any pending matter for which valuation is required.

I look forward to assisting you in this matter.  Kindly sign one copy of the letter and return.

|   EXECUTED BY APPRAISER:   |   EXECUTED BY CLIENT:   |
|---|---|
| *(signature)* | |
| (Signature) | (Signature) |
| Lance W. Doré, MAI, FRICS | |
| (Printed Name) | (Printed Name) |
| January 3, 2020 | |
| (Date) | (Date) |



# FEE AND RATE STRUCTURE

Following is a summary of the current hourly fee structure for Lance W. Dore, MAI, FRICS of The Dore Group as of January 1, 2020.

Client agrees to pay Appraiser, as compensation for the professional consulting services to be rendered, an hourly fee which will be computed as follows:

**Valuation and Consultation (Appraisal Process)**

    Principals – $475/Hour
    Vice President/Senior Management – $375/Hour
    Real Estate Advisor/Manager – $275/Hour
    Analyst/Support – $175/Hour

*Out-of-Pocket Expenses*
In addition to professional fees as set forth above, Client shall reimburse for any of the following out-of-pocket expenses incurred in connection with any assignment: overnight travel expenses including, but not limited to, transportation, lodging, meals and incidental expenses; overnight or courier delivery charges; and copies of original documents submitted by Client.

| | |
|---|---|
| Travel Expenses | At Cost |
| Messenger Services | At Cost |
| Mileage Reimbursement | At Rate Allowed by IRS |
| Overnight or Express Mail | At Cost |



THE DORÉ GROUP
INTERNATIONAL REAL ESTATE CONSULTATION AND FORENSIC VALUATION

January 3, 2020

Pamela M. Egan – Partner
Potomac Law Group, PLLC
1300 Pennsylvania Avenue, NW | Suite 700
Washington, DC 20004

Re: XS Ranch – Bastrop, Texas

Dear Ms. Egan:

Thank you for the opportunity to provide real estate consultation and valuation services on XS Ranch.

Real Estate Strategies
Real estate consultation and valuation services, as detailed in the Scope of Work, aim to assist Potomac Law Group, PLLC, to provide market value and consultation for litigation support.

The subject is identified as follows:

- XS Ranch is a master planned community located on the Colorado River, just north of the City of Bastrop consisting of approximately 8,740 acres. The project is within the City of Bastrop ETJ. XS Ranch has an approved Development Agreement with the City of Bastrop with a vesting period of 45 years for up to 10,000 single family detached units and 500,000 square feet of commercial space.

| | |
|---|---|
| SCOPE OF WORK | The consultation and valuation services will provide all necessary due diligence of the real estate assets, which will be prepared by The Doré Group, as they relate to the XS Ranch. |
| | I will submit an Appraisal Report and Complete Analysis, Review and Consulting abiding by all State of Texas, and USPAP (Uniform Standards of Professional Appraisal Practice) I will provide the market value, review and consulting services of real estate subject to the following assumptions: |
| | The provided values will include 1) Market Value, 2) Review of previous appraisals, and, 3) Consulting and Advisory. |
| INTEREST VALUED \| ESTATE | Fee Simple Estate |
| INTENDED USERS \| CLIENT | The client and intended user is Potomac Law Group, PLLC. Other intended users include Eric Terry Law and Teneo. It may not be distributed to or relied upon by other persons or entities without written permission of The Doré Group. |
| INTENDED USE | The intended use is to provide market value: |

(Texas Property Tax Code) Market Value is defined as:

a) "Market value" means the price at which a property would transfer for cash or its equivalent under prevailing market conditions if:

(A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser;

(B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and

(C) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other.

| | |
|---|---|
| DATE OF VALUE | TBD |
| DELIVERY DATE | As required by legal counsel. |
| DELIVERY METHOD | Electronic delivery. Hard copies upon request. |
| FEE | See Retainer Agreement, dated January 3, 2020. |
| RESPONSIBLE PARTY(IES) | Lance W. Doré, MAI, FRICS |
| EXPIRATION OF AGREEMENT | This Agreement is valid only if signed by both Appraiser and Client within 5 days of the Date of Agreement specified. |
| FURTHER CONDITIONS OF ENGAGEMENT | The Conditions of Engagement attached hereto are incorporated herein and are part of this letter of engagement. The report referred to herein is also referred to as the "appraisal". |

I have not performed appraisal services on the subject property in the past three years for the same client.

EXECUTED BY APPRAISER:

_(Signature)_

Lance W. Doré, MAI, FRICS
(Printed Name)

January 3, 2020
(Date)

EXECUTED BY CLIENT:

_(Signature)_

Christopher Wu
(Printed Name)

1/6/2020
(Date)

# CONDITIONS OF ENGAGEMENT

1. Applicable requirements other than the Uniform Standards of Professional Appraisal Practice (USPAP) are the code of professional ethics and standards of professional appraisal practice of the Appraisal Institute.
2. If the property appraised is currently under contract for sale, Client shall provide to Appraiser a copy of said contract including all addenda.
3. Appraiser shall invoice Client for services rendered pursuant to this Agreement based upon the fees specified in this Agreement. Appraiser's invoices are considered due upon receipt by Client and shall be deemed delinquent if not paid within 30 days of the date of Appraiser's invoice. A 1% late charge will apply monthly to invoices past 15 days due.
4. Appraiser's obligations pursuant to this Agreement are complete when the Appraisal Report in the form specified in this Agreement is delivered to Client pursuant to this Agreement. Appraiser agrees to be responsive to Client's legitimate inquiries regarding the contents of the report after delivery.
5. Appraiser shall not provide a copy of the written Appraisal Report to or disclose the results of the appraisal prepared in accordance with this Agreement to, any party other than Client, unless Client authorizes, except as stipulated in the Confidentiality Section of the Ethics Rule of the Uniform Standards of Professional Appraisal Practice (USPAP).
6. Appraiser may use employees or independent contractors at Appraiser's discretion to complete the assignment, unless otherwise agreed by the parties. Notwithstanding, Appraiser shall sign the written Appraisal Report and take full responsibility for the services provided as a result of this Agreement.
7. The fees set forth in this Agreement apply to the appraisal services rendered by Appraiser as set forth in this Agreement. Unless otherwise specified herein, Appraiser's services for which the fees in this Agreement apply shall not include meetings with persons other than Client or Client's agents or professional advisors; Appraiser's deposition(s) or testimony before judicial, arbitration or administrative tribunals; or any preparation associated with such depositions or testimony. Any additional services performed by Appraiser not set forth in this Agreement will be performed on terms and conditions set forth in an amendment to this Agreement, or in a separate agreement.
8. Unless otherwise stated in this Agreement, Client agrees that Appraiser's assignment pursuant to this Agreement shall not include Appraiser's participation in or preparation for, whether voluntarily or pursuant to subpoena, any oral or written discovery; sworn testimony in a judicial, arbitration or administrative proceeding; or attendance at any judicial, arbitration or administrative proceeding relating to this assignment. If necessary, outside of the scope of this engagement, Client agrees to pay Appraiser, as compensation for the professional consulting services to be rendered, an hourly fee will be computed as follows:
   - Principals (Administrative Procedure/Deposition /Trial) – $475/Hour
   - Vice President/Senior Management-$375/Hour
   - Real Estate Advisor/Manager – $275/Hour
   - Analyst/Support – $175/Hour
9. In addition to the Fee to be paid to Appraiser as set forth above, Client shall reimburse Appraiser for any of the following out-of-pocket expenses incurred by Appraiser in connection with this assignment: **(None Noted)**.
10. Any changes to the assignment as outlined in this Agreement shall necessitate a new Agreement. The identity of the Client, intended users, or intended use; the date of value; type of value; or property appraised cannot be changed without a new Agreement.
11. Client may cancel this Agreement at any time prior to Appraiser's delivery of the Appraisal Report upon written notification to Appraiser. Client shall pay Appraiser for work completed on assignment prior to Appraiser's receipt of written cancellation notice, unless otherwise agreed upon by Appraiser and Client in writing.
12. This Agreement shall be governed by the law of the state in which Appraiser's office as specified in this Agreement is located, exclusive of that state's choice of law rules. The parties agree that any legal proceeding brought by either party to interpret or enforce this Agreement, or to enforce an arbitration award entered pursuant to this Agreement, shall be brought in a state or federal court having jurisdiction over the location of Appraiser's office as specified in this Agreement, and the parties hereby waive any objections to the personal jurisdiction of said court.
13. Appraiser cannot agree to provide a value opinion that is contingent on a predetermined amount. Appraiser cannot guarantee the outcome of the assignment in advance. Appraiser cannot ensure that the opinion of value developed as a result of this Assignment will serve to facilitate any specific objective of Client or others or advance any particular cause. Appraiser's opinion of value will be developed competently and with independence, impartiality and objectivity.
14. Any notice or request required or permitted to be given to any party shall be given in writing and shall be delivered to the receiving party by: a) registered or certified mail, postage prepaid; (b) overnight courier, such as Federal Express, United Parcel Service or equivalent; or (c) hand delivery. Unless otherwise specified herein, notice shall be effective the date it is postmarked or given to a third party for delivery to the receiving party, whether or not the receiving party signs for or accepts delivery of such notice.
15. Nothing in this Agreement shall create a contractual relationship between Appraiser or Client and any third party, or any cause of action in favor of any third party. This Agreement shall not be construed to render any person or entity a third party beneficiary of this Agreement, including, but not limited to, any third parties identified herein.
16. In the event of a dispute concerning the subject matter of this Agreement, the parties shall in good faith attempt to resolve such dispute by negotiation between the parties' principals, or, if such negotiation is unsuccessful, by mediation

conducted by a third-party mediator. If such mediation results in an impasse, the parties shall submit their dispute to binding arbitration. Such mediation or, if necessary, binding arbitration shall be conducted pursuant to the mediation procedures or the commercial arbitration rules of the American Arbitration Association. Any arbitration shall be conducted in the city in which Appraiser's office as specified herein is located. The parties shall share equally the costs of any mediation. In the event of binding arbitration, the arbitrators shall, in addition to any relief appropriate to be awarded to the prevailing party, enter an award in favor of the prevailing party for that party's costs of the arbitration, including the party's reasonable attorneys' fees and arbitration expenses incurred in prosecuting or defending the arbitration proceeding. Subject to the right of the prevailing party to recover its share of the costs of the arbitration services pursuant to the arbitrator's award, the costs of the arbitration services shall be borne equally by the parties. If the prevailing party seeks judicial confirmation of any arbitration award entered pursuant to this Agreement, the court shall, in addition to any other appropriate relief, enter an award to the prevailing party in such confirmation proceeding for its reasonable attorneys' fees and litigation expenses incurred in confirming or successfully opposing the confirmation of such an award.

17. Neither party shall under any circumstances be liable to the other party for special, exemplary, punitive or consequential damages, including, without limitation, loss of profits or damages proximately caused by loss of use of any property, whether arising from either party's negligence, breach of the Agreement or otherwise, whether or not a party was advised, or knew, of the possibility of such damages, or such possibility was foreseeable by that party. In no event shall Appraiser be liable to Client for any amounts that exceed the fees and costs paid by Client to Appraiser pursuant to this Agreement.

18. Neither party may assign this Agreement to a third party without the express written consent of the other party, which the non-assigning party may withhold in its sole discretion. In the event this Agreement is assigned by mutual consent of the parties, it shall become binding on the assigning party's permitted assigns.

19. In the event any provision of this Agreement shall be determined to be void or unenforceable by any court of competent jurisdiction, then such determination shall not affect any other provision of this Agreement and all such other provisions shall remain in full force and effect.

20. Client agrees to defend, indemnify and hold harmless Appraiser from any damages, losses or expenses, including attorneys' fees and litigation expenses at trial or on appeal, arising from allegations asserted against Appraiser by any third party that if proven to be true would constitute a breach by Client of any of Client's obligations, representations or warranties made in this Agreement, or any violation by Client of any federal, state or local law, ordinance or regulation, or common law (a "Claim"). In the event of a Claim, Appraiser shall promptly notify Client of such Claim, and shall cooperate with Client in the defense or settlement of any Claim. Client shall have the right to select legal counsel to defend any Claim, provided that Appraiser shall have the right to engage independent counsel at Appraiser's expense to monitor the defense or settlement of any Claim. Client shall have the right to settle any Claim, provided that Appraiser shall have the right to approve any settlement that results in any modification of Appraiser's rights under this Agreement, which approval will not be unreasonably withheld, delayed or conditioned.

21. Client represents and warrants to Appraiser that (1) Client has all right, power and authority to enter into this Agreement; (2) Client's duties and obligations under this Agreement do not conflict with any other duties or obligations assumed by Client under any agreement between Client and any other party; and (3) Client has not engaged Appraiser, nor will Client use Appraiser's Appraisal Report, for any purposes that violate any federal, state or local law, regulation or ordinance or common law.

22. This Agreement represents the entire and integrated agreement between the Client and Appraiser and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by a written instrument signed by both Client and Appraiser. This Agreement includes the following Appendices, which are incorporated into, and made a part of this Agreement: **(None Noted)**