# EXHIBIT A - DIP MOTION
(Proposed Interim Order)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 20-10032** |
| **XS RANCH FUND VI, L.P.** | § | |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 363, 364 AND 507**
**(I) APPROVING POSTPETITION FINANCING,**
**(II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE**
**EXPENSE STATUS, (III) MODIFYING AUTOMATIC STAY, (IV) GRANTING**
**ADEQUATE PROTECTION, (V) GRANTING RELATED RELIEF, AND (VI)**
**SCHEDULING A FINAL HEARING**

THIS MATTER having come before the Court upon the motion (the "**DIP Motion**") by XS Ranch Fund VI, L.P., a Delaware limited liability company (the "**Borrower**"), as a debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Case**"), pursuant to sections 105, 361, 363, 364(c)(1), 364(d), and 507 of Title 11 of the United

States Code (the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of an interim order (this "**Interim Order**") *inter alia*:

(i)     Authorizing the Debtor to borrow (i) the sum of $750,000 on an interim basis (the "**Interim Loan**") and (ii) up to an additional $5.25 million on a final basis (together with the Interim Loan, the "**DIP Loan**") pursuant to the terms of the Secured Super-Priority Post-Petition Credit Agreement (the "**DIP Credit Agreement**") attached hereto as **Exhibit A**;

(ii)    Authorizing the Debtor to execute and enter into the DIP Credit Agreement and the other loan documents relating thereto (collectively, the "**DIP Loan Documents**") and to perform such other and further acts as may be required thereby;

(iii)   Authorizing the Debtor to use the proceeds of the DIP Loan in accordance with the budget set forth in Schedule 1.3 of the DIP Credit Agreement and attached hereto as **Exhibit B**, as such may be revised with the Lender's written consent;

(iv)    Finding pursuant to section 361(3) of the Bankruptcy Code that the Prepetition Secured Creditors (as defined herein) are adequately protected by and will realize the indubitable equivalent of their security interests as a result of: (i) a  substantial equity cushion in excess of 20% and (ii) post-petition payments of interest that are accruing by capitalization pursuant to the Crestline Loan Agreement and the Steiner Notes (the "**Adequate Protection Payments**") and authorizing and directing the Debtor to make the Adequate Protection Payments, as more specifically set forth herein;

(v)     Granting a super-priority claim pursuant to section 364(c)(1) and a priming lien pursuant to section 364(d) of the Bankruptcy Code in favor of Serene Investment Management,

LLC or its affiliates (collectively, the "**DIP Lender**") on all of the Debtor's property, both real and personal; and

(vi)    scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the *Declaration of Chris Wu in Support of Debtor's Motion Seeking Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 363, 364, and 507 (i) Approving Postpetition Financing, (ii) Granting Liens and Providing Superpriority Administrative Expense Status, (iii) Granting Adequate Protection, (iv) Granting Related Relief, and (v) Scheduling a Final Hearing*, and further having considered the *Declaration of James P. Foster in Support of the Debtor's Chapter 11 Petition and First Day Motions*, including the DIP Motion, the exhibits attached thereto, the DIP Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on the DIP Motion (the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014; and the Interim Hearing to consider the interim relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors and equity holders, and is essential for the continued operation of the Debtor's businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTOR, INCLUDING THE SUBMISSION OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      *Petition Date*.  On January 6, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas (the "**Court**") commencing this Case.

B.      *Debtor in Possession*.  The Debtor is continuing in the management and operation of its businesses and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Case.

C.      *Jurisdiction and Venue*.  The Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Case and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Committee Formation*.  As of the date hereof, the Office of the United States Trustee (the "**U.S. Trustee**") has not yet appointed any official committee in the Case pursuant to section 1102 of the Bankruptcy Code (each, a "**Statutory Committee**").

E.      *Findings Regarding Corporate Authority*.  The Debtor has all requisite corporate power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

F.      *Findings Regarding the Postpetition Financing*.

(i)      *Request for Postpetition Financing*.  The Debtor seeks authority to enter into the DIP Credit Agreement pursuant to which the DIP Lender will make $6 million available (the "**DIP Facility**") to the Debtor pursuant to the terms of the DIP Credit Agreement. At the Final Hearing, the Debtor will seek final approval of the proposed postpetition financing arrangements pursuant to a proposed final order (the "**Final Order**"), which shall be in form and substance acceptable to the DIP Lender.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)      *Need for Postpetition Financing*.  The Debtor's need to obtain credit pursuant to the DIP Credit Agreement is immediate and critical in order to enable the Debtor to continue operations and to administer and preserve the value of its estate.  The ability of the Debtor to finance its operations, maintain business relationships, protect the value of its assets and otherwise finance its operations requires the availability of working capital provided by the DIP Facility, the absence of which would immediately and irreparably harm the Debtor, its estate, its creditors and equity holders, and the possibility for a successful administration of this Case.  The Debtor does not have sufficient available sources of working capital and financing to operate its businesses or to maintain its properties in the ordinary course of business without the DIP Facility.

(iii)      *No Credit Available on More Favorable Terms*.  Given its current financial condition, financing arrangements, and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Credit Agreement. The Debtor has been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor has also been

unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Lender (1) perfected security interests in and liens on all of the Debtor's existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in this Interim Order.

(iv) *Use of Proceeds of the DIP Facility*. As a condition to entry into the DIP Loan Documents and the extensions of credit under the DIP Facility, the DIP Lender requires, and the Debtor has agreed, that proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with the budget (a copy of which is attached as **Exhibit B** hereto, as the same may be modified from time to time consistent with the terms of the DIP Loan Documents and this Interim Order, the "**Approved Budget**") , and subject to such variances as may be permitted thereby, solely for (i) post-petition operating expenses and other working capital, (ii) certain transaction fees and expenses, (iii) permitted payment of costs of administration of the Case, including professional fees to the extent permitted by the DIP Loan Documents and this Interim Order, (iv) Prepetition Secured Lender Adequate Protection Payments (as defined therein), and (v) as otherwise permitted under the DIP Loan Documents as approved by the Bankruptcy Court.

G. *Adequate Protection*.

(i) Based upon the record before the Court at the time of the hearing, the value of the Debtor's real property is in excess of $84 million and, therefore, each of the

Debtor's prepetition secured creditors are adequately protected by the Debtor's equity in the Debtor's real property after taking into account the lien granted to the DIP Lender on a priming lien basis under Bankruptcy Code section 364(d) to secure the full amount of the DIP Loan. The Court will, however, conduct an evidentiary hearing, if necessary, to determine the value of the Debtor's real property starting at __:__ _.m. (CT) on _____, 2020. Accordingly, this finding is not a final determination as to the value of the Real Property.

(ii)     Payment of the Adequate Protection Payments will result in the realization by Crestline Direct Finance L.P. and its affiliates' ("**Crestline**") and Steiner & Sons, Ltd. ("**Steiner**") of the indubitable equivalent of Crestline and Steiner's interest in the Debtor's real property as contemplated by section 361(3) of the Bankruptcy Code. For the avoidance of doubt, any claim arising from the obligation of the Debtor to make the Adequate Protection Payments shall be junior in all respects to the priming lien granted to the DIP Lender pursuant to the DIP Loan Documents and this Interim Order.

H.     *Good Faith of the DIP Lender*.

(i)     *Willingness to Provide Financing*.   The DIP Lender has indicated a willingness to provide financing to the Debtor subject to:  (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Loan Documents; (b) satisfaction of the closing conditions set forth in the DIP Loan Documents; and (c) entry of findings by the Court that such financing is essential to the Debtor's estate, that the DIP Lender is extending credit to the Debtor pursuant to the DIP Loan Documents in good faith, that the DIP Lender has acted in good faith, and that the DIP Lender's superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the DIP Loan Documents will have the protections provided in sections 363(m) and 364(e) of the Bankruptcy

Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

(ii)     *Business Judgment and Good Faith Pursuant to Sections 363(m) and 364(e)*.  The extension of credit under the DIP Loan reflects the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties and is supported by reasonably equivalent value and consideration.  The DIP Loan Documents were negotiated in good faith and at arms' length among the Debtor and the DIP Lender with the assistance and counsel of their respective advisors, and the DIP Lender has acted in good faith.  The use of credit to be extended under the DIP Credit Agreement shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of sections 363(m) and 364(e) of the Bankruptcy Code, and the DIP Lender is therefore entitled to the protection and benefits of sections 363(m) and 364(e) of the Bankruptcy Code and this Interim Order.

I.     *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the U.S. Trustee for the District of Western District of Texas; (ii) the Internal Revenue Service; (iii) the parties included on the Debtor's consolidated list of thirty (30) largest unsecured creditors; (iv) counsel to each of the Debtor's prepetition secured creditors and any other lienholders of record; and (v) those parties who have filed a notice of appearance and request for service of pleadings in the Case pursuant to Bankruptcy Rule 2002.  The Debtor has made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

J.    *Immediate Entry*.    Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    <u>DIP Financing Approved on an Interim Basis</u>.    The DIP Motion is granted as set forth herein on an interim basis.

2.    <u>Authorization of the DIP Financing</u>.

(a)    The Debtor is expressly and immediately authorized and empowered to execute, enter into and perform all of its obligations under the DIP Loan Documents, and to borrow money on an interim basis through the date of the Final Hearing up to an aggregate principal amount of $750,000 inclusive of all interest, fees, expenses and other obligations as set forth in the DIP Loan Documents (collectively, the "**Obligations**").

(b)    Without further approval of this Court, the Debtor is authorized and directed (i) to execute and deliver the DIP Loan Documents and (ii) to deliver any instruments and documents that may be necessary or required for performance by the Debtor under the DIP Loan Documents and the creation and perfection of the priming liens described in and provided for by this Interim Order and the DIP Loan Documents. The Debtor is hereby authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents without need to obtain further Court approval, including, without limitation, commitment fees, funding fees, exit fees, the reasonable fees and disbursements of the DIP Lender's attorneys, advisers, accountants, and other consultants and professional persons, all to the extent provided

in the DIP Loan Documents, with invoices to be provided in accordance with paragraph 10 below. Upon execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with its terms.

3. <u>Authorization to Borrow</u>. Until entry of the Final Order and subject to the terms, conditions, and limitations on availability as set forth in the DIP Credit Agreement and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized to draw from the DIP Facility the sum of $750,000.

4. <u>Authorization to Use Loan Proceeds</u>. The Debtor is authorized to use the proceeds of the DIP Loan approved herein for the purposes described in the Approved Budget attached hereto as **Exhibit B**, provided however, that the Debtor shall not expend an amount in excess of ten (10%) percent for any line item in one month absent either the consent of the DIP Lender or further order of the Court.

5. <u>Super-Priority Claim</u>. Effective immediately upon the entry of this Interim Order, pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code, all of the Obligations shall constitute allowed super-priority administrative expense claims against the Debtor (without the need to file any proof of claim), subject only to the Carve-Out (as defined in the DIP Credit Agreement), with priority over any and all claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expense or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code.

6. <u>Priming Lien</u>. Effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation or filings by the Debtor of mortgages, security

agreements, control agreements, pledge agreements, financing statements or other similar documents, or possession or control, the DIP Lender is hereby granted first priority liens pursuant to Bankruptcy Code section 364(d) (the "**__DIP Liens__**"). The DIP Lien shall in all respects be senior in priority to any pre-petition claim against the Debtor. Pursuant to the DIP Lien, the DIP Lender holds continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on any and all presently owned and hereafter acquired assets and real and personal property of the Debtor, excluding the Debtor's causes of action arising under the Bankruptcy Code and subject to the Carve-Out as defined in the DIP Credit Agreement.

(a)     The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any successor Case, upon the conversion of the Case to any case under Chapter 7 of the Bankruptcy Code (or in any other successor Cases), and/or upon the dismissal of the Case or any successor Cases.  The DIP Liens shall not be subject to challenge under sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7.     __Amendments__.  The DIP Loan Documents may from time to time be amended, modified or supplemented by the parties thereto without further Order of this Court and without notice or a hearing if such amendment, modification, or supplement is (A) non-material and (B) in accordance with the DIP Loan Documents. In the case of a material amendment, modification, or supplement to the DIP Loan Documents that is adverse to the Debtor's estate, the Debtor shall provide notice (which may be provided through electronic mail or facsimile) to counsel to any Statutory Committee (if appointed) and the U.S. Trustee (collectively, the "__Notice Parties__"), each

of whom shall have five (5) days from the date of such notice to object in writing to such amendment, modification or supplement. If neither of the Notice Parties indicates that they have an objection to the amendment, modification or supplement, the Debtor may proceed to execute the amendment, modification or supplement, which shall become effective immediately upon execution. If a Notice Party timely objects to such amendment, modification or supplement, and such objection is not consensually resolved by the Debtor, the DIP Lender, and the objecting Notice Party, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or supplement; provided, that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard. Any material modification, amendment or supplement that becomes effective in accordance with this paragraph shall be filed with the Court by the Debtor no later than three (3) business days after becoming effective (and may be filed with the Court by the DIP Lender if the Debtor fails to do so).

8.    <u>Adequate Protection Payments</u>. The Debtor is authorized and directed to pay the Adequate Protection Payments in the amount and at the times set forth in the Approved Budget.

9.    <u>Good Faith Under Sections 363 and 364 of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>. The DIP Lender has acted in good faith in connection with this Interim Order and its reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with sections 363(m) and 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of the Court, or any other court, the DIP Lender shall be and hereby is entitled to the protections provided in sections 363(m) and 364(e) of the Bankruptcy Code. Any such

modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made, or lien, claim or priority authorized or created hereby, provided that the Interim Order was not stayed by court order after due notice had been given to the DIP Lender at the time the advance was made or the liens, claims or priorities were authorized and/or created.

10. <u>DIP and Other Expenses</u>. The Debtor is authorized and directed to pay all fees and reasonable and documented out-of-pocket expenses of the DIP Lender in connection with the DIP Facility (including, without limitation, expenses incurred prior to the Petition Date), as provided in the DIP Loan Documents. Payment of all such fees and expenses shall not be subject to allowance by the Court and professionals for the DIP Lender shall not be required to comply with the U.S. Trustee fee guidelines. Notwithstanding the foregoing, at the same time that summary copies of invoices are delivered to the Debtor, the professionals for the DIP Lender shall deliver a copy of their respective invoice summaries to counsel for any Statutory Committee (if appointed) and the U.S. Trustee, redacted as necessary with respect to any privileged or confidential information contained therein. Any objections raised by the Debtor, the U.S. Trustee or any Statutory Committee (if appointed) with respect to such invoice summaries within ten (10) days of the receipt thereof will be resolved by the Court or agreed among the parties. In the event of any objection that cannot otherwise be resolved consensually, the provisions of section 107 of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure shall apply. Pending such resolution, the undisputed portion of any such invoice summary will be paid promptly by the Debtor. Notwithstanding the foregoing, the Debtor is authorized and directed to pay on the Closing Date (as defined in the DIP Credit Agreement) all fees, costs and expenses of the DIP Lender incurred on or prior to such date

without the need for any professional engaged by the DIP Lender to first deliver a copy of its invoice summary as provided for herein.

11. <u>Binding Effect of Interim Order</u>. Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtor, the DIP Lender, the Prepetition Secured Creditors, all other creditors of the Debtor, any Statutory Committee or any other court appointed committee (if appointed), and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Case, any Successor Cases, or upon dismissal of the Case or any Successor Case. Notwithstanding anything contained herein with respect to obligations or limitations when a Final Order is entered, the terms of the Final Order shall be what is binding on all parties.

12. <u>Interim Order Controls</u>. In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or this Interim Order, the provisions of this Interim Order shall govern and control.

13. <u>Relief from the Automatic Stay</u>. Upon twenty-one (21) days' prior written notice to the Debtor (the "**Remedies Notice Period**"), counsel for the Committee and the U.S. Trustee, and as set forth in this this Order, the Lender is hereby granted relief from any stay of proceeding (including, without limitation, the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or holders of any security interest) to (i) permit, in an Event of Default under the DIP Loan Documents by the Debtor, foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any of the Debtor which have a value in excess of $100,000 in the aggregate or (ii) permit, in an Event of Default under the DIP Loan Documents by the Debtor, other actions that would have a material adverse effect on the Debtor or its estate;

provided that such actions are permitted under the DIP Loan Documents, this Order or applicable law; and provided further that the Remedies Notice Period shall run concurrently with any notice period provided for under the DIP Loan Documents. During the Remedies Notice Period: (i) the Lender shall be stayed from exercising its rights and remedies; and (ii) the Debtor, the Committee, and/or any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court. Unless the Court orders otherwise upon expiration of the Remedies Notice Period, the automatic stay, as to the Lender, shall be deemed lifted and modified, without further order of this Court, to permit the Lender to exercise any and all of its rights and remedies under the DIP Loan Documents and this Order.

14.     The Lender's Liability for Collateral.  So long as the Lender complies with reasonable commercial lending practices, the Lender shall not in any way or manner be liable or responsible for:  (a) the safekeeping of the Collateral; (b) any loss or damage thereto occurring or arising in any manner or fashion from any cause; (c) any diminution in the value thereof; or (d) any act or default of any carrier, warehouseman, bailee, forwarding agency, or other person whomsoever.  All risk of loss, damage or destruction of the Collateral shall be borne by the Debtor.

15.     Remedies Cumulative.  The Lender's rights and remedies under the DIP Credit Agreement, the DIP Loan Documents, and all other agreements shall be cumulative.  The Lender shall have all other rights and remedies not inconsistent herewith as provided under the California Uniform Commercial Code, by law, or in equity, subject to the requirements of the Bankruptcy Code.  No exercise by the Lender of one right or remedy shall be deemed an election, and no waiver by the Lender of any Event of Default on the Debtor's part shall be deemed a continuing waiver.  No delay by the Lender shall constitute a waiver, election, or

acquiescence by it.  No waiver by the Lender shall be effective unless made in a written document signed on behalf of the Lender and then shall be effective only in the instance and for the purpose for which it was given.

16.     _Demand; Protest_.  The Debtor waives demand, protest, notice of protest, notice of default or dishonor, notice of payment and nonpayment, notice of any default, nonpayment at maturity, release, compromise, settlement, extension, or renewal of accounts, documents, instruments, chattel paper, and guarantees at any time held by the Lender on which the Debtor may in any way be liable.

17.     _Savings Clause_. Notwithstanding any other provision of the DIP Credit Agreement, the aggregate interest rate charged with respect to any of the Obligations, including all charges or fees in connection therewith deemed in the nature of interest under applicable law shall not exceed the Highest Lawful Rate (as defined in the DIP Credit Agreement).  If the rate of interest (determined without regard to the preceding sentence) under the DIP Credit Agreement at any time exceeds the Highest Lawful Rate, the outstanding amount of the Advances made thereunder shall bear interest at the Highest Lawful Rate until the total amount of interest due thereunder equals the amount of interest which would have been due thereunder if the stated rates of interest set forth in the DIP Credit Agreement had at all times been in effect. In addition, if when the Loans made under the DIP Credit Agreement are repaid in full the total interest due (taking into account the increase provided for above) is less than the total amount of interest which would have been due under the DIP Credit Agreement if the stated rates of interest set forth in the DIP Credit Agreement had at all times been in effect, then to the extent permitted by law, the Debtor shall pay to the Lender an amount equal to the difference between the amount of interest paid and the amount of interest which would have been paid if the Highest Lawful

Rate had at all times been in effect.  Notwithstanding the foregoing, it is the intention of the Lender and the Debtor to conform strictly to any applicable usury laws.  Accordingly, if the Lender contracts for, charges, or receives any consideration which constitutes interest in excess of the Highest Lawful Rate, then any such excess shall be cancelled automatically and, if previously paid, shall at the Lender's option be applied to the outstanding amount of the Loans made thereunder or be refunded to the Debtor.

18.     Indemnity.  The Lender has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by it in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the Loans, including in respect of the granting of the DIP Liens and any challenges or objections to the DIP Loan Documents. Accordingly, the Lender shall be and hereby is indemnified and held harmless by the Debtor in respect of any claim or liability incurred in respect thereof or in any way related thereto, provided that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct. No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this Paragraph or in the documentation for the DIP Credit Agreement, to the Debtor's obligation to indemnify and/or hold harmless the Lender.

19.     Limitation on Surcharge. Without limiting the terms of the Carve-Out, no costs or expenses of administration which have been or may be incurred in the Bankruptcy Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against either Lender, the Carve-Out (other than parties entitled to assert a right to be paid under the Carve-Out), or the Collateral pursuant to sections 105 or 506(c) of the

Bankruptcy Code or otherwise, without the prior written consent of the Lender (and the beneficiaries of the Carve-Out in the case of a surcharge against the Carve-Out). No action, inaction or acquiescence by the Lender shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the Lender or the Collateral.

20.     No Marshalling. The Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral. Without limiting the generality of the immediately preceding sentence, no party (other than the Lender) shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the Collateral after an Event of Default under the DIP Loan Documents.

21.     Final Hearing. The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for **[__], 2020, at _:00 _.m. (CT)** before the Honorable [_____], United States Bankruptcy Judge at the United States Bankruptcy Court for the Western District of Texas. On or before [__], 2020, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "**Final Hearing Notice**"), together with copies of this Interim Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Statutory Committee (if appointed); and (d) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on **[_____], 2020, at 4:00 p.m. (CT)**, which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtor, Eric Terry Law, PLLC, 3511 Broadway St., San Antonio, Texas 78209, Attn: Eric B.

Terry; (ii) counsel to the DIP Lender, Michelson Law Group, 220 Montgomery St, Suite 2100, San Francisco, CA 94104, Attn: Randy Michelson; (iii) counsel to a creditors' or equity committee (if appointed); and (iv) [_____], Office of the United States Trustee, 903 San Jacinto Blvd # 230, Austin, TX 78701.

22. <u>Effect of this Interim Order</u>. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

23. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

# # #

Submitted by:

Eric Terry
State Bar. No. 00794729
**ERIC TERRY LAW, PLLC**
3511 Broadway
San Antonio, Texas 78209
Telephone:   (210) 468-8274
Facsimile: (210) 319-5447
eric@ericterrylaw.com

 **PROPOSED ATTORNEYS FOR DEBTOR**

# EXHIBIT A

**DIP Credit Agreement**

**[Not Included With Service Copy; see Exh. B to DIP Motion]**

# EXHIBIT B

**Approved Budget**

**[Not Included With Service Copy; See Exh. C to DIP Motion]**