### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 20-10032-HCM** |
| **XS RANCH FUND VI, L.P.,** | § | |
| Debtor | § | **Chapter 11** |
| | § | |

### CRESTLINE DIRECT FINANCE, L.P.'S
### MOTION TO DISMISS CHAPTER 11 CASE

Crestline Direct Finance, L.P. ("**Crestline**") files this motion (this "**Motion**") for entry of an order dismissing the above-captioned chapter 11 bankruptcy case (the "**Bankruptcy Case**")[1] of XS Ranch Fund VI, L.P (the "**Debtor**") for cause pursuant to section 1112(b). In support of this Motion, Crestline respectfully submits as follows:

### JURISDICTION

1. The United States Bankruptcy Court for the Western District of Texas (this "**Bankruptcy Court**") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for consideration of this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are sections 1112 and 1129(a)(3) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), and Rule 1017, of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

### INTRODUCTION

3. This Bankruptcy Case was filed on the eve of a deed of trust foreclosure sale solely to prevent Crestline from exercising its rights following the Debtor's default on its confirmed and substantially consummated plan of reorganization from its prior Chapter 11 case

---

[1] The Bankruptcy Case has not been previously converted from another chapter of the Bankruptcy Code.

filed in the United States Bankruptcy Court, for the Northern District of California (the "**CA Bankruptcy Court**").

4.     No "unanticipated changed circumstances" exist, let alone sufficiently extraordinary unanticipated changed circumstances, justifying the filing of the proverbial "Chapter 22" bankruptcy case before this Bankruptcy Court. To the contrary, as will be shown below, this case is merely an impermissible attempt by the Debtor to modify its prior plan and strip Crestline of the rights it was given under the prior plan. This Bankruptcy Case should be dismissed.

## BACKGROUND

5.     The Debtor, a Delaware Limited Partnership, was established in 2006 for the purpose of purchasing raw land, developing related infrastructure and eventually selling the real property to developers. *See* Disclosure Statement in Support of Debtor's Second Amended Chapter 11 Plan of Reorganization ("**Discl. Stat.**"), attached as Exhibit 2 to the Request for Judicial Notice in Support of the Motion ("**RJN**"), filed concurrently with the Motion, at p. 22. From 2006 to 2012, the Debtor purchased approximately 8,700 acres of real property near Bastrop, Texas. *Id*. at 21-22. Most of the property was purchased from Steiner & Sons Ltd., a Texas limited partnership, and a related entity (collectively "**Steiner**"). *Id.*

6.     On February 17, 2015, a number of the Debtor's limited partners (collectively, the "**Rescission Claimants**") commenced an arbitration against the Debtor, Jim Foster ("**Foster**") and others. RJN, Ex. 2 at 27. On or about July 2016, the parties entered into a stipulated arbitration award, representing the Rescission Claimants' original investment in the collective amount of $28,575,001. On December 14, 2016, the award was confirmed into a judgment in Texas state court. *Id*. at 27.

### Prior Chapter 11 Proceeding

7.  On December 23, 2016, an involuntary petition for relief under chapter 7 of the Bankruptcy Code was filed against the Debtor in the CA Bankruptcy Court, designated as Case No. 16-31367 (the "**CA Bankruptcy Case**"). On May 31, 2017, the Debtor consented to an order for relief under chapter 11. On June 16, 2017, the Bankruptcy Court entered an *Amended Order on Debtor's Consent to Entry of Order for Relief and Election to Convert Chapter 7 Case to a Case Under Chapter 11 of the Bankruptcy Code* authorizing the Debtor's consent to entry of an order for relief effective June 1, 2017, and granting the Debtor's election to convert the chapter 7 case to a case under chapter 11 of the Bankruptcy Code. RJN, Ex. 2 at 28.

8.  On September 14, 2017, the CA Bankruptcy Court entered an order approving $18.6 million in debtor-in-possession financing from Crestline, for itself and certain other investment funds (the "**Crestline DIP**"). The Crestline DIP paid off a portion of the Debtor's debt owed to Steiner, created value for the estate by eliminating certain pre-petition option purchase agreements entered into between the Debtor and Steiner and provided funding for the CA Bankruptcy Case. RJN, Ex. 2 at 29. The Crestline DIP was secured by a first priority lien in all of the Debtor's personal property and a first priority lien on a portion of the Debtor's real property with a second priority lien on the remaining real property behind the first lien held by Steiner. *See* RJN, Ex. 3.

### Prior Confirmed Chapter 11 Plan

9.  On February 5, 2018, the CA Bankruptcy Court entered its *Order: (1) Approving the Debtor's Disclosure Statement in Support of Debtor's Second Amended Chapter 11 Plan of Reorganization; and (2) Setting Hearing and Deadlines for Plan Confirmation. See* RJN, Exs. 1 & 2. On March 26, 2018, the CA Bankruptcy Court entered its Order Confirming (the

"**Confirmation Order**") Debtor's Second Amended Chapter 11 Plan of Reorganization, as Modified (the "**Plan**"). *See* RJN, Exs. 4 (Confirmation Order) & 5 (Plan). Pursuant to the Plan, the reorganized Debtor would be managed by Foster and Michael VanderLey, the designated plan agent ("**VanderLey**"). *See* RJN, Ex. 5 at §§ 2.1.72 & 7.3.

10. In connection with the Plan, Crestline provided exit financing to the Debtor, which provided funds to pay off the Crestline DIP, fund the Plan distributions (including the payment of the Debtor's unsecured and administrative claims) and provided funds for the operation of the reorganized debtor (the "**Crestline Exit Financing**"). As provided under the Plan, the Debtor had nine months in order to raise $10 million in equity to fund working capital and infrastructure projects. *See* RJN, Ex. 5 at § 7.2 & Ex A, attached to the Plan. If the Debtor was unable to raise the required equity, then it was required to conduct an orderly liquidation of its assets, including the retention of a real estate firm to market Debtor's real property. *Id.*

11. The Debtor closed on the Crestline Exit Financing on May 10, 2018, and therefore the Debtor had until February 10, 2019, to raise the $10 million in equity. *See* RJN, Ex. 6 at ¶ 3, attached thereto. When the Debtor was unable to timely raise the required equity, Foster and Crestline entered into a forbearance agreement extending the deadline to raise the required $10.0 million to March 27, 2019. The Debtor, however, was unable to raise the required equity by the extended deadline as well. *Id.* at ¶ 4. Thereafter, as required under the Crestline Exit Financing and Plan, the Debtor was to proceed with an orderly liquidation of its assets.

***Defaults Under Prior Chapter 11 Plan***

12. On June 19, 2019, Crestline and the Debtor entered into a First Amendment to the Crestline Exit Financing providing an additional $1 million to the Debtor in order for the Debtor, among other things, to finalize the potential sale of the Debtor's assets (discussed herein). Due

to disputes between VanderLey and Foster, the First Amendment included the following Event of Default:

> Plan Agent; Specified Liquidator. If: (i) Michael VanderLey is terminated or otherwise ceases to act as Plan Agent, unless a Person, acceptable to Administrative Agent in its sole discretion, becomes Plan Agent concurrently upon Michael VanderLey being terminated or ceasing to be Plan Agent; or (ii) Land Advisors is terminated or otherwise ceases to act as Specified Liquidator, unless a Person, acceptable to Administrative Agent in its sole discretion, becomes Specified Liquidator concurrently upon Land Advisors being terminated or ceasing to act as Specified Liquidator.

*See* RJN, Ex. 6 (Section 9.1(n) of the First Amendment to Credit, Security and Guaranty Agreement, attached thereto).

13.    The day after the First Amendment was executed and Crestline funded the $1 million, however, Foster terminated VanderLey as plan agent with no replacement plan agent. As a result, on June 21, 2019, Crestline submitted a Notice of Event of Default and Acceleration of Obligations to the Debtor. *See* RJN, Ex. 6 at ¶ 5, attached thereto. Additionally, Crestline noticed a deed of trust foreclosure sale of the Debtor's real property. As the Debtor had a potential buyer for the Debtor's assets, Crestline agreed to continue the foreclosure sale multiple times from the initial date of August 6, 2019, to ultimately December 3, 2019. *See* RJN, Ex. 6 at ¶¶ 6-9, attached thereto.

14.    Additionally, on October 25, 2019, the Debtor received notices of default from Steiner for the Debtor's non-payment of interest due in June and September 2019. *See* RJN, Ex. 8 at 4; Ex. 10 at ¶ II.C.

***The Debtor's Prior Attempts to Deny Crestline of Its Rights Under the Plan***

15.    On or about November 7, 2019, Crestline was notified by VanderLey that the potential buyer of the Debtor's assets had terminated its agreement to purchase the Debtor's

assets. *See* RJN, Ex. 6 at ¶ 10. At that time, Crestline's foreclosure sale was noticed for December 3, 2019. On November 27, 2019, the law firm of Winthrop Golubow Hollander, LLP, the Debtor's former bankruptcy counsel, filed a motion to convert the CA Bankruptcy Case to a chapter 7 proceeding, with a supporting declaration from VanderLey (the "**Motion to Convert**"). *See* RJN, Exs. 6 & 10. In connection with the Motion to Convert, the movant sought to have the motion heard on shortened time to stop Crestline's scheduled December 3, 2019 foreclosure sale. *See* RJN, Ex. 9. Later that same day, the CA Bankruptcy Court entered an order denying movant's request for an order shortening time stating:

> Movant has asserted no compelling reason for a hearing on shortened time. The facts cited in support of the exigency have been know (sic) to all parties for months and the Debtor has been in material default on its plan for months. The only new fact alleged is ***Crestline's recent decision to pursue the rights it was given under the confirmed Plan***. This is an insufficient basis for the court to shorten time to effectively one day over a holiday period.

RJN, Ex. 11 at 4 (emphasis added).

16.     On December 2, 2019, the day before Crestline's scheduled foreclosure sale, the Debtor filed its *Plaintiff's Original Petition, Application for Temporary Restraining Order, and Request for Temporary Injunction* with the District Court of Bastrop County, Texas, **without providing any notice to Crestline** or its counsel (the "**TRO Petition**").  *See* Declaration of James Delaune in Support of the Motion (the "**Delaune Decl.**"), filed concurrently with the Motion, at ¶2.  The TRO Petition was verified by VanderLey. *See* RJN, Ex. 7. The TRO Petition contained many of the same arguments raised in the Motion to Convert and sought to stop the Crestline foreclosure sale. Later that day, Crestline received a copy of the *Temporary Restraining Order & Order Setting Hearing for Temporary Injunction* (the "**TRO**"), precluding Crestline from moving forward with the December 3, 2019 foreclosure sale. *See* RJN, Ex. 12.

17.     On December 5, 2019, Crestline's counsel sent a letter to the Debtor's Texas counsel that filed the TRO Petition demanding immediate dismissal of the lawsuit due to the false and misleading statements contained in the TRO Petition. Delaune Decl., at ¶3. On December 6, 2019, the Debtor filed its Plaintiff's Taking of Nonsuit and Notice Thereof, dismissing the TRO Petition. *See* RJN, Ex. 13.

18.     Crestline then re-noticed its foreclosure sale of the Debtor's real estate for January 7, 2020. *See* Delaune Decl., at ¶4-5; Exhibits 1 & 2, attached thereto. On the eve of this foreclosure sale, and while its CA Bankruptcy Case remains pending, the Debtor yet again filed for chapter 11 bankruptcy protection this time in a new venue before this Bankruptcy Court.

## REQUESTED RELIEF

19.     Crestline requests this Bankruptcy Case be dismissed for cause pursuant to 11 U.S.C. §1112(b), resulting from the Debtor's lack of good faith.

## LEGAL ARGUMENT

### I.     Dismissal of this Case is Warranted Under 11 U.S.C. § 1112(b)(1)

20.     The Bankruptcy Code provides that a bankruptcy court "shall" dismiss a bankruptcy case where a movant has established cause. 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) provides a non-exhaustive list of events that establish "cause." The Bankruptcy Code defines "cause" to include, among others, "a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and "gross mismanagement of the estate." 11 U.S.C. § 1112(b)(4)(A). In addition to the statutory examples of "cause," it is well established in the Fifth Circuit that dismissal of a chapter 11 case is warranted for "cause" under 11 U.S.C. § 1112(b) if the case was not filed in good faith. *Little Creek Dev. Co. v. Commonweatlh Mortg.Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068,

1072 (5th Cir.1986); *In re Humble Place Joint Venture*, 936 F.2d 814, 817 (5th Cir. 1991) ("Because *Little Creek* explicitly treated the question of good faith dismissals under § 1112, the case settles any statutory or constitutional question about that procedure.").

21.    Generally, courts consider the factors set out by the Fifth Circuit in *Little Creek*, when determining whether a case has been filed in bad faith. These factors are whether the debtor: (i) has one asset, which is a tract of real property; (ii) has few unsecured creditors whose claims are small in relation to the claims of the secured creditors; (iii) has few employees; (iv) has property that is the subject of a foreclosure action as a result of arrearages on the debt; (v) has financial problems involving essentially a dispute between the debtor and a secured creditor which can be resolved in a pending state court action; and (vi) filed the bankruptcy case at a time that evidences an intent to delay or frustrate legitimate efforts of the debtor's secured creditors to enforce their rights. 779 F.2d 1068, 1072–73 (5th Cir.1986). Still, the Fifth Circuit requires a determination of "cause" be made from a consideration of the totality of circumstances. *Matter of T–H New Orleans L.P.,* 116 F.3d 790 (5th Cir.1997) ("The requirement of good faith must be viewed in light of the totality of the circumstances surrounding establishment of a Chapter 11 plan . . . .").[2]

22.    Pursuant to the analysis required under 11 U.S.C. §1112(b), the party seeking dismissal bears the initial burden of establishing "cause" by a preponderance of the evidence. *In re Woodbrook Assocs.,* 19 F.3d 312, 317 (7th Cir.1994). Once "cause" is shown, the burden then shifts to the debtor to establish the applicability of the exceptions in 11 U.S.C. § 1112(b)(2). *In*

---

[2] "The good faith standard [] 'protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons . . . available only to those Debtor and creditors with clean hands.'" *Id.*; *see also See In re S. Ca. Sound Sys., Inc.*, 69 B.R. 893, 899 (S.D. Ca. 1987) (explaining case law supports dismissal of bankruptcy cases filed in bad faith) (citing numerous cases in support).

*re Briggs-Cockerham, L.L.C.*, No. 10-34222-BJH-11, 2010 WL 4866874, at *3 (Bankr. N.D. Tex. Nov. 23, 2010).[3]

A. *Cause Exists Due to the Debtor's Successive Chapter 11 Filing as an Impermissible Attempt to Modify Substantially Consummated Chapter 11 Plan*

23.     Where a debtor confirms a chapter 11 plan and subsequently files a second chapter 11 case, "it is impermissible to use such filings to alter or modify obligations which were created and assumed through a substantially consummated prior plan of reorganization, except in the most extraordinary of circumstances." *In re Northtown Realty Co., L.P.,* 215 B.R. 906, 911 (Bankr. E.D.N.Y.1998). Further, a confirmed plan constitutes a final judgment on the merits and will be given preclusive effect if the other elements of *res judicata* are present. *See Corbett v. MacDonald Moving Services, Inc.,* 124 F.3d 82, 87–88 (2d Cir.1997); *see also In re Frank's Nursery & Crafts, Inc.*, No. 04 15826 PCB, 2006 WL 2385418, at *3 (Bankr. S.D.N.Y. May 8, 2006). As a result, the alleged good faith in filing a successive chapter 11 case is subjected to greater scrutiny. *See Lincoln Nat'l Life Ins. Co. v. Buoy, Hall & Howard and Assocs. (Buoy, Hall & Howard and Associates),* 208 B.R. 737, 743 (Bankr. S.D. Ga.1995) (observing assessment of

---

[3] 11 U.S.C. 1112(b)(2) provides, in pertinent part:

> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that--
>> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
>>> (i) for which there exists a reasonable justification for the act or omission; and
>>> (ii) that will be cured within a reasonable period of time fixed by the court.

good faith in successive chapter 11 case requires greater scrutiny as result of general good faith requirement in a chapter 11 cases).[4]

24. Significantly, when a debtor has substantially consummated a chapter 11 plan in its first bankruptcy case, the filing of a successive chapter 11 case circumvents sections 1112(b)(1), 1127(a), and 1141(a) of the Bankruptcy Code.[5] Because of this, such a successive filing "heavily implies . . . bad faith." *In re JCP Properties, Ltd.,* 540 B.R. 596, 615 (Bankr. S.D. Tex. 2015). This is due, in part, to the fact that a confirmed plan not only binds the debtor and its creditors, 11 U.S.C. § 1141(a), but it also cannot be modified once it has been substantially consummated. 11 U.S.C. § 1127(b); *see also JCP Props.,* 540 B.R. at 606. "The combined effects of §§ 1127(b) and 1141(a) in a non-individual chapter 11 case are to make a confirmed and substantially consummated plan carry a weight of finality. *JCP Props.,* 540 B.R. at 606. Thus, when determining whether a second chapter 11 case is filed in good faith, whether the first case involved a substantially consummated plan must be considered. *Id.* at 610 (citing *Matter of Bouy, Hall & Howard and Assocs.,* 208 B.R. 737 (Bankr. S.D. Ga.1995)); *see also In re Triumph Christian Ctr., Inc.,* 493 B.R. 479 (Bankr. S.D. Tex. 2013) (explaining "a debtor generally should not be permitted to go forward with a successive chapter 11 reorganization case where it has defaulted on a confirmed, substantially consummated plan.").

25. Overall, when confronted with successive chapter 11 filings, courts typically consider the following five (5) factors: (1) the length of time between the two cases; (2) the foreseeability and substantiality of events which ultimately caused the subsequent filing; (3)

---

[4] The Bankruptcy Code does not explicitly prohibit a debtor from filing a second chapter 11 case. *See In re Jartran, Inc.,* 886 F.2d 859, 866-67 (7th Cir. 1989) ("serial [c]hapter 11 filings are permissible under the Code **if filed in good faith**"); *Matter of Elmwood Dev. Co.,* 964 F.2d 508, 511 (5th Cir. 1992) ("[T]he mere fact that a debtor has previously petitioned for bankruptcy relief does not render a subsequent [c]hapter 11 petition *'per se'* invalid.").

[5] "Substantial consummation is a statutory measure for determining whether a reorganization plan may be amended or modified by the bankruptcy court." *In re JCP Properties, Ltd.,* 540 B.R. 596, 606 (Bankr. S.D. Tex. 2015).

whether the new plan in the successive case contemplates liquidation or reorganization; (4) the degree to which creditors consent to the filing of the successive case; and (5) the extent to which an objecting creditor's rights were modified in the initial reorganization and such creditor's treatment in the successive case. *Bouy,* 208 B.R. at 743-44 ("[a] debtor should not be permitted to routinely file a successive Chapter 11 reorganization where it has defaulted on a confirmed, substantially consummated plan of reorganization, because such an effort would, in effect, constitute an impermissible attempt to modify a substantially consummated plan"); *see also In re McMahan,* 481 B.R. 901 (Bankr. S.D. Tex. 2012). To demonstrate good faith, a debtor must show "that the second petition is not an attempt to thwart the initial bankruptcy proceedings." *See Elmwood,* 964 F.2d at 511.

26.     Here, the CA Bankruptcy Case remains pending despite the Debtor's successive chapter 11 filing. Crestline, as well as other creditors, have not consented to the filing of this successive case. And last, as explained *supra*, the Debtor's filing of a successive case is, in fact, an attempt to thwart the initial bankruptcy proceedings and undermine Crestline's rights under the Plan. The timing of the second filing only strengthens this conclusion. On or about November 7, 2019, VanderLey notified Crestline that the potential buyer of the Debtor's assets had terminated its proposal and would no be longer moving forward. Because of the Debtor's repeated defaults under the substantially consummated Plan, Crestline notified the Debtor of its intent to foreclose on December 3, 2019. On November 27, 2019, the Debtor's former bankruptcy counsel filed the Motion to Convert (which remains pending before the CA Bankruptcy Court). In filing the Motion to Convert, VanderLey admitted the following through the executed *Declaration of Michael J. VanderLey in Support of the Motion Under 11 U.S.C. §1112(b) to Convert Case to Chapter 7 and the Ex Parte Motion for Order Shortening Time re*

*Hearing on Motion Under 11 U.S.C. §1112(b) to Convert Case to Chapter 7* (RJN, Ex. 6; the

"**VanderLey Declaration**"):

(a)     On July 24, 2019, the Debtor entered into a stipulation to execute documents and take acts necessary to fully consummate the Plan, which the CA Bankruptcy Court approved by its August 29, 2019 order.

(b)     As a result of the stipulation, Crestline agreed to extend the foreclosure sale date from August 6, 2019 to September 3, 2019, and again to October 1, 2019, allowing VanderLey to execute a purchase and sale agreement ("**APA**") to sell the Debtor's property on August 20, 2019.

(c)     Upon executing the APA, VanderLey has pursued activities related to the potential sale of the property, including negotiations with Crestline related to funding certain costs incidental to the sale process as allegedly authorized through the stipulation.

(d)     VanderLey completed certain, required "value preservation" or "value enhancement" tasks for the property at issue.

(e)     On November 7, 2019, the prospective buyer under the APA terminated the arrangement in accordance with its rights.

(f)     Since the prospective buyer's termination under the APA, VanderLey reinitiated the sale process by reaching out to parties who had expressed interest in acquiring the property, as well as brokers.

27.     Furthermore, and as set out *supra,* the Debtor filed its TRO Petition without providing notice to Crestline or its counsel. As a result, Crestline received a copy of the TRO later that same day, preventing Crestline from moving forward with its foreclosure sale. In

response to demands made by counsel for Crestline, the Debtor dismissed the TRO Petition on December 6, 2019, after which Crestline re-noticed its foreclosure sale for January 7, 2020. *See* RJN, Ex. 13. The Debtor now states is was merely trying to avoid "costly litigation" with Crestline. *See* Docket No. 9, at ¶ 31. If the Debtor truly believed Crestline was acting in violation of the Plan, it could have sought relief with the CA Bankruptcy Court, the court that has retained jurisdiction over such disputes and should be the court interpreting its own orders. *See* RJN Ex. 4, at 14; Ex. 5, at §XIII. Instead the Debtor commenced this costly Bankruptcy Case to circumvent the jurisdiction of the CA Bankruptcy Court.

28. The Debtor acknowledges that it could have gone back to the CA Bankruptcy Court but instead wants a new bankruptcy case to obtain a "clean slate." *See* Docket No. 9, at ¶32. That, however, is not how it works. Otherwise any reorganized debtor unhappy with how its plan is being implemented could just file a new bankruptcy case, providing little weight of finality to such plan. The law says otherwise. *See JCP Props.,* 540 B.R. at 606. Nevertheless, the Debtor continued to thwart the finality and effect of the Plan by filing this Bankruptcy Case, to obtain protection of the automatic stay, the date prior to Crestline's most recently-noticed foreclosure sale, just as it had done with the TRO Petition.

29. It is clear that the Debtor did not receive the requested relief it sought in either state court or the CA Bankruptcy Case. As a result, the Debtor commenced this Bankruptcy Case in a different forum. In filing this second case, during the pendency of the CA Bankruptcy Case and on the day before the scheduled foreclosure sale, there is no question as to the purpose of this filing. The Debtor seeks to prevent the scheduled foreclosure sale (which has been successful because of the applicability of the automatic stay), while also attempting to modify the treatment of Crestline under its substantially consummated Plan. Essentially, this equates to

an impermissible litigation tactic. The attempt to obtain a tactical litigation advantage is not within the legitimate scope of the bankruptcy laws. Where the timing of a chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith. *See In re 15375 Memorial Corp. v. Bepco, L.P.*, 589 F.3d 605, 626 (3d Cir. 2009).

30. The Debtor's actions are consistent with a bad-faith filing of a chapter 11 petition in attempting to circumvent Crestline's rights under the substantially consummated Plan and, in doing so, thwarting Crestline (as well as other creditors') rights in the process. Dismissal for this factor, alone, is sufficient "cause" for dismissal of this successive bankruptcy case.

### B. The Debtor Cannot Demonstrate Unanticipated Changed Circumstances, Requiring Dismissal of the CA Bankruptcy Case

30. The existence of unanticipated changed circumstances that are sufficient to justify a successive chapter 11 filing is the only, *and very limited*, exception to the general rule against such filings. *In re Triumph Christian Ctr., Inc.*, 493 B.R. 479, 487 (Bankr. S.D. Tex. 2013); *see also Elmwood,* 964 F.2d at 511 (rationalizing existence of this limited exception). The exception is only applied in rare and "very unusual, almost extraordinary, factual situations." *In re Triumph Christian Ctr., Inc.*, 493 B.R. 479, 489 (Bankr. S.D. Tex. 2013) (citing, *inter alia, In re Frank's Nursery & Crafts, Inc.,* Case No. 04–15826(PCB), 2006 WL 2385418, at *3 (Bankr. S.D.N.Y. May 8, 2006) (citing *In re Northtown Realty Co., LP.,* 215 B.R. 906, 911 (Bankr. E.D.N.Y. 1998)). Often, even unforeseeable and extraordinary changed circumstances will not necessarily validate a second chapter 11 filing. *See, e.g.*, *In re Adams,* 218 B.R. 597, 601–02 (Bankr. D. Kan. 1998). The requisite unanticipated changed circumstances must both (i) justify the debtor's default under the first plan, and (ii) make reorganization under a second plan likely. *In re Casa Loma Assocs.,* 122 B.R. 814, 819 (Bankr. N.D. Ga. 1991). The debtor bears the burden of proof

of demonstrating this exception applies due to unanticipated change in circumstances justifying the serial chapter 11 filing. *In re Triumph Christian Ctr. Inc.,* 493 B.R. 479, 489 (Bankr. S.D. Tex. 2013).

31.     The Debtor cannot offer any evidence demonstrating any unanticipated changed circumstances sufficient to justify this successive chapter 11 filing. None of the circumstances set forth in the VanderLey Declaration, whether considered individually or cumulatively, are sufficient to justify application of the exception to the general rule against successive chapter 11 petitions. *See* RJN, Ex. 6. For example, courts have found that demand for payment and the threat of repossession, although not known at the time of confirmation, were all generally foreseeable results and, therefore, insufficient for the Debtor to demonstrate unanticipated changed circumstances. *See In re Roxy Real Estate Co., Inc.*, 170 B.R. 571 (Bankr. E.D. Pa. 1993). Courts have also found the following alleged unanticipated changed circumstances to be insufficient for the purpose of invoking the rare exception: the inability to sell property, the emergence of several potential buyers for the debtor's assets, the decline in the economy, and the development of various legal issues including, but not necessarily limited to, pending litigation among a debtor's creditors. *See In re McMahan*, 481 B.R. 901, 919 (Bankr. S.D. Tex. 2012). There is no evidence justifying the serial filings here and thus, the filing of this second Bankruptcy Case amounts to bad faith.

### C. Cause Exists Because the California Bankruptcy Case Remains Pending

32.     Simultaneous cases by the same debtor are prohibited and constitute "cause" for dismissal. *In re Keen*, 121 B.R. 513, 514 (Bankr. W.D. Ky. 1990) (explaining Congress did not "contemplate, much less pass, a provision allowing two cases."). Here, the CA Bankruptcy Court has yet to issue its final decree in the Debtor's first bankruptcy case and, as a result, the CA

Bankruptcy Case remains active. "[L]ongstanding historical support" exists for the rule that a debtor may not maintain two concurrent bankruptcy cases. *In re Caperoads Plaza Ltd. P'ship*, 154 B.R. 614, 615 (Bankr. D. Mass. 1993) ("[S]ince [1925], it has generally been held that simultaneous cases are prohibited."); *In re Befort*, 137 B.R. 56, 58 (Bankr. D. Kan. 1992) (observing well-established rule that a debtor "may not maintain two simultaneous and separate bankruptcy cases"); *Matter of Lunsford*, 39 B.R. 490, 491 (Bankr. N.D. Ga. 1984) (noting "Bankruptcy Code does not permit the concurrent pendency of two cases"); *In re Bodine*, 113 B.R. 134, 136 (Bankr. W.D.N.Y. 1990) ("A debtor may only maintain one active bankruptcy case."); *In re Belmore*, 68 B.R. 889 (Bankr. N.D. Pa. 1987) (holding that while one bankruptcy case remains pending there cannot be a subsequent one effecting the same debt); *In re Smith*, 85 B.R. 872, 874 (Bankr. W.D. Okla. 1988) ("There is simply no rule of law which would allow debtors to have two cases pending at the same time.").

33.    The situation in *Caperoads* is similar to the case here. In *Caperoads,* the debtor filed a chapter 11 petition and eventually confirmed a chapter 11 plan. *Caperoads,* 154 B.R. at 614. While the first case remained open, the debtor commenced a second chapter 11 case wherein a secured creditor subsequently moved to dismiss. *Id*. The debtor argued that, due to the inactivity in the first case, only one case was truly pending. *Id*. at 615. The bankruptcy court rejected this argument, dismissed the case, and explained that by allowing a debtor to have two open cases, a party might seek conversion or dismissal of the first case under 11 U.S.C. § 1112(b), which could create havoc, especially with regard to claims. *Caperoads*, 154 B.R. at 616.[6]

---

[6] *See In re Smith*, 85 B.R. 872, 874 (Bankr. W.D.Okla. 1988) (emphasis added) ("If these debtors are permitted to maintain their second petition while a prior case is pending, **an easy avenue for abuse of the bankruptcy system would be sanctioned**. It is conceivable that debtors could undertake numerous simultaneous filings when events in

34.      Just as in *Caperoads,* the Debtor has filed a second chapter 11 petition despite the ongoing nature of the CA Bankruptcy Case. (Indeed, the relevant facts here are worse for the Debtor than the facts in *Caperoads* as the Motion to Convert remains pending—leaving no question as to the "active" nature of the CA Bankruptcy Case and creating the potential for the simultaneous cases and an abuse of the bankruptcy system.)[7] Although the Plan in the CA Bankruptcy Case has been substantially consummated, the Debtor has not sought, and the CA Bankruptcy Court has not entered, a final decree. *See* 11 U.S.C. § 350; *see also* Bankruptcy Rule 3022 ("After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."). Additionally, while their request to have the matter heard on shortened time was denied, the Motion to Convert remains pending in the CA Bankruptcy Case. It is undeniable then that the Debtor knowingly filed a second chapter 11 petition involving the same debt, property, and creditors leading to potential "havoc" should the CA Bankruptcy Case be converted to a chapter 7. The filing demonstrates a lack of good faith and constitutes cause under 11 U.S.C. § 1112(b), requiring dismissal of this Bankruptcy Case.

[Remainder of Page Intentionally Left Blank]

---

one case take a turn to their disliking. There is simply no rule of law which would allow debtors to have two cases . . . .").

[7] *See also In re Heywood,* 39 B.R. 910, 911 (Bankr. W.D.N.Y. 1984) (explaining fact that debtor possesses only one estate and each bankruptcy must be administered as a single estate under a single chapter of the Bankruptcy Code).

## CONCLUSION

35.     Accordingly, because the Debtor plainly commenced this case in bad faith, "cause" exists, and this Bankruptcy Court is required to dismiss this Bankruptcy Case pursuant to section 1112(b) of the Bankruptcy Code.

## REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Crestline respectfully requests that the Court: (i) grant this Motion; (ii) enter an order dismissing this case with prejudice; and (iii) grant such other and further relief as is just and proper.

Dated January 8, 2020

Respectfully Submitted By,

*/s/ Todd J. Dressel*

Todd J. Dressel, Esq. (Cal. Bar No. 220812)
MCGUIREWOODS LLP
Two Embarcadero Center, Suite 1300
San Francisco, CA 84111
Telephone: (415) 844-1965
Facsimile: (415) 844-1934
tdressel@mcguirewoods.com
*(admitted pro hac vice)*

Michael A. McConnell
Texas Bar I.D. 13447300
Katherine T. Hopkins
Texas Bar I.D. 24070737
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9777

*Attorneys for Crestline Direct Finance, L.P*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on January 8, 2020, on all persons/entities receiving notification via ECF notification and upon the parties listed below and in the attached service list via U.S. First Class Mail.

XS Ranch Fund VI, L.P.                          Eric Terry
818 Sayers Road                                 3511 Broadway
Bastrop, TX 78602                               San Antonio, TX 78209

U.S. Trustee
903 San Jacinto Blvd., Suite 230
Austin, TX 78701

*/s/ Katherine T. Hopkins*
Katherine T. Hopkins

125654453_3.docx

Label Matrix for local noticing
0542-1
Case 20-10032-tmd
Western District of Texas
Austin
Mon Jan  6 16:00:37 CST 2020

XS Ranch Fund VI, L.P.
818 Sayers Road
Bastrop, TX 78602-3652

U.S. BANKRUPTCY COURT
903 SAN JACINTO, SUITE 322
AUSTIN, TX 78701-2450

Aqua Water Service Company
PO Drawer P
Bastrop, TX 78602-1989

Aventine Development Services
Attn: Chad Hagle
19360 Rinaldi St., Ste. 730
Porter Ranch, CA 91326-1607

Bastrop County Tax Assessor/Collector
PO Box 579
Bastrop, TX 78602-0579

Bastrop County Tax Assessor/Collector
c/o Lee Gordon
PO Box 1269
Round Rock, TX 78680-1269

Bluebonnet Electric Cooperative
690 Texas Hwy 71 W, Bldg. 1
Bastrop, TX 78602-3663

City of Bastrop
Attn: City Manager
904 Main St.
PO Box 427
Bastrop, TX 78602-0427

Clayton Williams Ranch Co.
Attn: Jeff Williams
PO Box 1668
Fort Stockton, TX 79735-1668

Coast Range Investments, LLC
Attn: James Foster
818 Sayers Rd.
Bastrop, TX 78602-3652

Coy Sunderman
139 Colovista Dr.
Bastrop, TX 78602-7400

Crestline Direct Finance, L.P.
c/o Crestline Investors, Inc.
Attn: James Cochran
201 Main St., Ste. 1900
Fort Worth, TX 76102-3135

DF Capital Management
Attn: Rob Riva
14701 Phillips Hwy., Ste 300
Jacksonville, FL 32256-3742

Federal Emergemecy Management Agency
FRC 800 North Loop 288
Denton, TX 76209-3698

Force Ten Partners, LLC
Attn: Michael VenderLey
20342 SW Birch, Ste. 220
Newport Beach, CA 92660

FoxTrot LLC
c/o Tullius Law Group
515 S. Flower St., 18th Fl.
Los Angeles, CA 90071-2201

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

Jackson Walker LLP
Attn: James Alsup
100 Congress Ave., Ste. 1100
Austin, TX 78701-4042

John Landwehr
219 Main St.
Smithville, TX 78957-1839

Kelly Thevenot
326 McDonald Rd.
Cedar Creek, TX 78612-4001

LIA Engineering, Inc.
7500 Rialto Rd., Bldg. 2
Ste. 100
Austin, TX 78735-8531

Lower Colorado River Authority
Attn: Executive Manager, Water Services
PO Box 200
Austin, TX 78767

Melting Point Solutions
c/o Keller & Benvenutti
Attn: Tobias Keller
650 California Ave., #1900
San Francisco, CA 94108-2736

PV Development Management
Attn: Mark Kehke & Jason Perrin
4343 Von Karman Ave., 3rd Fl.
Newport Beach, CA 92660-2099

Pine Associates, LLC
4455E. Camelback Rd., Ste. C-140
Phoenix, AZ 85018-2821

RMD & Co., Inc.
408 Baylor St.
Austin, TX 78703-5312

Ranch Wireless Internet
3547 N Hwy 123 Bypass
Seguin, TX 78155-7328

Rimon P.C.
Attn: Ben Douglas
One Embercadero Ctr., Ste. 400
San Francisco, CA 94111-3619

Ron Freeman Esq.
Law Offices of Ronald J. Freeman
102 N. Railroad Ave.
Pflugerville, TX 78660-2767

Squar Milner
Attn: Katherine Gough
1150 Santa Monica Blvd., Ste. 600
Los Angeles, CA 90025

Steiner & Sons
c/o Waller Lansden Dortch & Davis, LLP
Attn: Eric Taube
100 Congress Ave., Ste. 1800
Austin, TX 78701-4042

Texas Assocaites/AFCO
5600 N. River Rd., Ste, 400
Des Plaines, IL 60018-5187

Texas Associates/AFCO
1120 Capital of Texas Hwy. S
Bldg 3
Austin, TX 78746-6464

Texas Commission on Enviromental Quality
MC 172
PO Box 13087
Austin, TX 78711-3087

Texas Comptroller of Public Accounts
Revenue Accounting Div- BK Section
P.O. Box 12548, MC-008
Austin, TX 78711-2548

Texas Department of Transportation
Attn: Project Delivery Team
7901 N. IH 35
Austin, TX 78753-6602

Texas Railroad Commission
Enforcement Division
Office of General Counsel
P.O. Box 12967
Austin, TX 78711-2967

Tony Gonzalez
1344 Sayers Rd.
Bastrop, TX 78602-3638

US Department of the Army
Fort Worth District, Corps of Engineers
Attn: Chief Regulatory Branch
PO Box 17300
Fort Worth, TX 76102-0300

United States Trustee - AU12
United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701-2450

Winthrop Couchot Golubow Hollander
Attn: Garrick Hollander
1301 Dove St., Ste. 500
Newport Beach, CA 92660-2467

XS Ranch Municipal Utility District
c/o Ron Freeman
102 N. Railroad Ave.
Pflugerville, TX 78660-2767

Eric Terry
Eric Terry Law, PLLC
3511 Broadway
San Antonio, TX 78209-6513

End of Label Matrix
Mailable recipients    43
Bypassed recipients     0
Total                  43